## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

JASON SCOTT,

     Plaintiff,

v.                                    No. 2:25-cv-632-SMD-GJF

HORSERACING INTEGRITY
& SAFETY AUTHORITY, et al.,

     Defendants.

### MEMORANDUM ORDER DENYING PLAINTIFF'S MOTION
### FOR A PRELIMINARY INJUNCTION

**THIS MATTER** comes before the Court on Plaintiff Jason Scott's ("Dr. Scott's" or "Plaintiff's") motion for a preliminary injunction, Doc. 8 ("Mot. for Prelim. Inj."). In the spring of 2025, the Horseracing Integrity and Welfare Unit ("HIWU"), a private non-profit organization housed within the Horseracing Integrity and Safety Authority (the "Authority") and overseen by the Federal Trade Commission ("FTC"), charged Plaintiff with possessing two "banned substances" which federal regulations prohibit for use in thoroughbred horses. *See* 15 U.S.C. § 3053; HISA Rule 3214(a). Plaintiff denied the allegations. HIWU and Plaintiff are set to arbitrate these charges on November 19, 2025. Plaintiff now moves to enjoin those proceedings, arguing that the Authority and Rule 3214 violate the non-delegation doctrine, Fifth and Seventh Amendments, and the Administrative Procedure Act. Defendants HIWU and the Authority filed a response on behalf of themselves and the FTC (collectively "Defendants") on August 8, 2025. *See* Doc. 37 ("Defs.' Resp."). The FTC also filed a notice of joinder and supplemental arguments opposing Plaintiff's motion, Doc. 38 ("FTC's Resp."). Upon review of the relevant law, record, and oral statements, the Court will **DENY** Plaintiff's request for a preliminary injunction.

## BACKGROUND

I.    History of the Horseracing Integrity and Safety Authority

In 2020, Congress passed the Horseracing Integrity and Safety Act ("the Act") to standardize horseracing regulations and reduce equine deaths on the track. *See* 15 U.S.C. § 3051 et seq.; 166 Cong. Rec. H4981 (statement of Rep. Tonko). The Act established the Horseracing Integrity and Safety Authority, which is a private, nonprofit organization supervised by the FTC, to advise the agency on and develop horseracing standards. 15 U.S.C. § 3052(a). This allocation of regulatory power to a private entity is notable, though not entirely novel—the Maloney Act, passed 87 years ago, instituted a parallel relationship between the Securities and Exchange Commission ("SEC") and the Financial Industry Regulation Authority ("FINRA").[1] 15 U.S.C. § 78(c); *see also* Doc. 46 at 4 (explaining that the HISA Rules and the Act are "modeled" on the FINRA scheme).

The Authority's board of directors is comprised of nine members, five of whom "shall be independent members selected from outside the equine industry." 15 U.S.C. § 3052(b)(1). The selection of board members is left up to a nominating committee. *Id.* § 3052(d). The Act tasks the Authority with "developing and implementing a horseracing anti-doping and medication control program and a racetrack safety program for covered horses, covered persons, and covered horseraces." *Id.* § 3052(a). These regulations only apply to thoroughbred horses ("covered horses"); they do not concern quarter horses or other breeds. *Id.* §§ 3051(4)-(6), 3054(a)(2). Veterinarians engaged in the care, training, or racing of covered horses are "covered persons." *Id.* § 3051(4). Congress amended the Act in 2022 to increase the FTC's oversight of the Authority and specified that the FTC may "abrogate, add to, or modify" rules the Authority promulgates as

---

[1] The Maloney Act initially created the National Association of Securities Dealers. FINRA, its successor, was formed in 2007. *See Fiero v. Fin. Indus. Regul. Auth.*, 660 F.3d 569, 571–72 (2d Cir. 2011)

"necessary and appropriate." *Id.* § 3053(c). Any standard drafted by the Authority must be approved by the FTC and deemed as "consistent with" the statute and the FTC's rules. *Id.* The Authority is empowered to investigate and discipline violations of the Act and participate in private arbitration proceedings with alleged violators. *Id.* §§ 3054(c), 3057. The FTC can conduct de novo review over the Authority's factual findings and conclusions of law and may "affirm, reverse, modify, or set aside, or remand" the Authority's decisions. *Id.* § 3058(c). The FTC's decisions are subject to Article III judicial review. 5 U.S.C. § 704; *see* 15 U.S.C. § 3058(b)(3)(B).

In early 2023, the Authority proposed anti-doping and medication control ("ADMC") standards to the FTC. *See* Fed. Trade Comm'n, Notice, HISA Anti-Doping and Medication Control Rule, 88 Fed. Reg. 5070–5201 (Jan. 26, 2023). The FTC approved the ADMC rules following public notice and comment. Fed. Trade Comm'n, *Order Approving the Anti-Doping and Medication Control Rule Proposed by the Horseracing Integrity and Safety Authority* (Mar. 27, 2023). Among other things, the ADMC banned the possession of certain substances "at all times" by "covered persons" "unless there is a compelling justification for such possession." HISA Rule 3214.[2] As with the rest of the Act, the ban is solely applicable to covered horses. HISA created the Horseracing Integrity & Welfare Unit ("HIWU") to enforce the ADMC Program,. HISA Rule 3010(e)(1); *see* § 3054(e). HIWU charges are adjudicated before the Internal Adjudication Panel, which may be a single arbitrator. *Id.*; HISA Rules 3360, 7020. If the arbitrator finds a covered person to have violated the HISA, they may impose sanctions, such as monetary fines or suspension from covered events. 16 C.F.R. § 1.148(b). Any civil sanction the arbitrator imposes is subject to de novo review by an administrative law judge ("ALJ"). 15 U.S.C.

---

[2] The full set of HISA rules are published in the federal register, *see* 88 Fed. Reg. 5084 (2023). For purposes of this order, the Court will cite the HISA rules in the format HISA uses, e.g. HISA Rule 1010. All of HISA's rule series are available here: https://hisaus.org/regulations.

§ 3058(b)(1).  The ALJ's decision is reviewable by the FTC, which is in turn reviewable in an Article III court.  *Id.* § 3058; 5 U.S.C. § 704.

II.    Factual Background

The Court recounts the facts leading to these charges as expressed in Plaintiff's complaint, Doc. 1 ("Pl.'s Compl."), present motion, Pl.'s Mot. for Prelim. Inj. at 5–7,[3] and attached exhibits. Plaintiff is an equine veterinarian who resides and works in New Mexico.  Pl.'s Compl. ¶ 17. Plaintiff's practice encompasses multiple breeds of horses, including thoroughbreds.  *Id.* ¶¶ 25, 46. To serve his clients, Plaintiff operates a mobile veterinary clinic that enables him to travel to racetracks, training facilities, and farms across the state.  *Id.* ¶ 25.  Within his medication stock, Plaintiff carries Pitcher's Plant extract (also known as Sarapin) and Adenosine Monophosphate ("AMP").  *Id.* ¶ 27.  Plaintiff exclusively administers Sarapin and AMP to quarter horses, *id.* ¶ 41; he does not use them for the treatment of thoroughbreds.  *Id.*  Under HISA Rule 4117, Sarapin is "prohibited at all times."  AMP, though not specifically named in the ADMC, falls under the Rules' catch-all provision, which bans "[a]ny pharmacological substance that is (i) not addressed by Rules 4112 through 4117 (ii) has no current approval by any governmental regulatory health authority for veterinary or human use, and (iii) is not universally recognized as a valid veterinary use."  *See* HISA Rule 4111.

On February 13, 2025, Plaintiff was working a "Mixed Meet," i.e. a meet with quarter horse and thoroughbred events, at the Sunland Park Racetrack in New Mexico.  *Id.* ¶¶ 42, 46. HIWU searched Plaintiff's vehicle, found two bottles of Sarapin and two bottles of AMP, and seized them.  *Id.* ¶ 42.  HISA Rule 3214(a) bans possession of both substances absent a "compelling justification."  *See* 88 Fed. Reg. at 5100.  On April 30, 2025, HIWU served Plaintiff

---

[3] The page numbers referenced in this order correlate with the page numbers assigned through the ECF system, rather than those assigned by the parties.

with an Equine Anti-Doping ("EAD") notice, requesting that he "provide a 'compelling justification' for his possession of the two substances. Mot. for Prelim. Inj., Ex. 2. Dr. Scott responded shortly thereafter and explained that "he had medications intended for Quarter Horses on his truck during a Mixed Meet and that Quarter Horses he treats were stabled at the racetrack where medications were seized." Mot. for Prelim. Inj. at 14; Mot. for Prelim. Inj., Ex. 3. On June 5, 2025, HIWU replied and informed Plaintiff that his justification was insufficient. *See* Mot. for Prelim. Inj., Ex. 4 at 1. HIWU further explained that Plaintiff could admit to the allegations and pay the associated fines or deny them and appear before an arbitrator. *Id.* Plaintiff opted to proceed to a hearing. That hearing is now scheduled for November 19, 2025. Doc. 51 at 1.

### III.    Procedural History

Plaintiff brings three facial challenges to the HISA and Rule 3214: (1) that Congress's creation of the Authority violates separation of powers principles and the non-delegation doctrine; (2) that Rule 3214, the possession rule, was promulgated in violation of FTC regulations and the Administrative Procedure Act ("APA") and is void for vagueness under the Fifth Amendment; and (3) that "the Act and the FTC Order unconstitutionally assign private causes of action tried to a jury at common law to an administrative tribunal, in violation of the Seventh Amendment right to a jury trial." Mot. for Preliminary Inj. at 9. Although Plaintiff styles his motion as a facial challenge, his requested relief at this stage is far narrower. Plaintiff seeks "first and foremost, a stay of administrative proceedings pending a determination of the merits of his claims." Pl.'s Reply at 2; *see also* Mot. for Prelim. Inj. at 1. Plaintiff "has not asked the Court to enjoin any rule that specifically relates to Covered Horses," nor for the Court "to enjoin post-race testing on Covered Horses," nor "to enjoin the racetrack safety program." Pl.'s Reply at 2.

The Court held a hearing on Plaintiff's motion on August 13, 2025. Doc. 44. Following

oral argument, the Court requested supplemental briefing on the issue of jurisdiction—specifically, whether jurisdiction is precluded under *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200 (1994). Plaintiff, the FTC, and the HISA all filed briefing on this issue. *See* Doc. 43; Doc. 45; Doc. 46.

## LEGAL STANDARD

A preliminary injunction is an "extraordinary remedy," warranted only where the movant evinces a "clear and unequivocal" right to relief. *Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1258 (10th Cir. 2005). "To obtain a preliminary injunction, the movant must show: (1) a substantial likelihood of success on the merits; (2) irreparable harm to the movant if the injunction is denied; (3) that the threatened injury outweighs the harm that the preliminary injunction may cause the opposing party; and (4) that the injunction, if issued, will not adversely affect the public interest." *Gen. Motors Corp. v. Urb. Gorilla, LLC*, 500 F.3d 1222, 1226 (10th Cir. 2007) (citation omitted). In the Tenth Circuit, the potential for irreparable harm "is the single most important prerequisite for the issuance of a preliminary injunction, [and the moving party must first demonstrate that such injury is likely before the other requirements for the issuance of an injunction will be considered." *Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*, 356 F.3d 1256, 1260 (10th Cir. 2004). The court "need not consider the other factors" if a movant fails to meet their burden as to any element. *State v. U.S. Env'tl Prot. Agency*, 989 F.3d 874, 890 (10th Cir. 2021).

## DISCUSSION

I.    Plaintiff Has Failed to Demonstrate a Likelihood of Irreparable Harm.

The Court's analysis begins and ends with the most critical factor—irreparable harm. "To constitute irreparable harm, an injury must be certain, great, actual and not theoretical." *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1189 (10th Cir. 2003) (internal quotation mark and citation omitted). "[T]he party seeking injunctive relief must show that the injury complained of is of such

imminence that there is a clear and present need for equitable relief to prevent irreparable harm." *Id.* Economic harm typically does not warrant a preliminary injunction, since a party can almost always be made whole again through damages. *Sampson v. Murray*, 415 U.S. 61, 90 (1974); *Heideman*, 348 F.3d at 1189. In suits against the federal government, however, financial injury becomes irreparable because sovereign immunity results in "nonrecoverable compliance costs." *Chamber of Com. of U.S. v. Edmondson*, 594 F.3d 742, 770–71 (10th Cir. 2010) ("Imposition of monetary damages that cannot later be recovered for reasons such as sovereign immunity constitutes irreparable injury."); *see, e.g.*, *Ryan LLC v. Fed. Trade Comm'n*, 739 F. Supp. 3d 496, 518 (N.D. Tex. 2024). A plaintiff may also obtain a preliminary injunction if the economic harm is of such magnitude that delaying relief would threaten their "very existence." *Mountain Valley Pipeline, LLC v. 6.56 Acres of Land*, 915 F.3d 197, 218 (4th Cir. 2019); *Vaquería Tres Monjitas, Inc. v. Irizarry*, 587 F.3d 464, 484 (1st Cir. 2009). A plaintiff who demonstrates that their business will close without judicial intervention can thus fulfill the irreparable harm prong, even if their financial injury could later be calculated. *Mountain Valley*, 915 F.3d at 218 ("Only when a temporary delay in recovery somehow translates to permanent injury—threatening a party's very existence by, for instance, driving it out of business before litigation concludes—could it qualify as irreparable."); *see, e.g.*, *Alpine Secs. Corp. v. Fin. Indus. Regul. Auth.*, 121 F.4th 1314, 1329 (D.C. Cir. 2024) ("Alpine faces irreparable harm because it faces a grave risk of being forced out of business before full SEC review, rendering any opportunity for later review at best inadequate and, at worst, moot.").

Plaintiff initially identified three harms. Mot. for Prelim. Inj. at 48. First, violation of the Seventh Amendment right to a jury trial. Second, the denial of a due process right to fair notice. Third, irreparable financial harm from countering the HIWU's enforcement action and complying

with Rule 3214 because he "cannot recover damages simply by showing that a regulation was arbitrary, capricious, or promulgated in a manner contrary to law." *Id.* at 48, 49.  As to the jury trial and due process harms, Plaintiff avers that "the denial of these rights, without more, are irreparable harms" and "[s]uccess on any of these points voids the challenged actions here ab initio." *Id.* at 48.

    None of the harms named in Plaintiff's motion relate to his separation-of-powers argument. Spurred by Defendants' argument that a separation-of-powers violation does not in and of itself work an irreparable harm, *see* Defs.' Resp. at 23, Plaintiff's reply located a new harm—a due process violation from being forced to proceed before an unconstitutional agency.  Pl.'s Reply at 12–13 (citing *Panama Ref. Co. v. Ryan*, 293 U.S. 388, 433 (1935)).  This argument comes too late. All of Plaintiff's alleged harms should have been stated in his initial motion, rather than raised for the first time in reply.  *Griffin v. Bell*, 694 F.3d 817, 822 (7th Cir. 2012); *ClearOne Communs., Inc. v. Bowers*, 643 F.3d 735, 782 (10th Cir. 2011).  Nevertheless, the Court will discuss the purported due process violation flowing from Plaintiff's separation-of-powers argument insofar as it pertains to the contentions made in Defendants' response.

    A.  Requiring Plaintiff to proceed before the Authority does not constitute *per se* irreparable harm, even if the Authority's power is unconstitutional under separation-of-powers principles.

    Plaintiff challenges Congress's creation of the Authority as an unconstitutional delegation of legislative and executive power.  Mot. for Prelim. Inj. at 15.  Defendants counter that *Leachco* forecloses this claim as a viable route to injunctive relief.  Defs.' Resp. at 23–24 (citing *Leachco, Inc. v. Consumer Prod. Safety Comm'n*, 103 F.4th 748 (10th Cir. 2024), *cert. denied*, 145 S. Ct. 1047 (2025)).  There, the Tenth Circuit held that "a mere generalized separation of powers violation, by itself, does not establish irreparable harm."  *Leachco*, 103 F.4th at 753.  Plaintiff

rebuts that "a successful non-delegation [claim] necessarily entitles the party to retrospective relief[.]" Pl.'s Reply at 7. He then cites *Panama Refining* for the proposition that "if a statute conferring jurisdiction is void on non-delegation grounds," a preliminary injunction is necessary to protect the "right to be free from the unlawful exercise of jurisdiction." *Id.* at 12. In essence, Plaintiff views *Panama Refining* as empowering him to collapse the merits prong with the irreparable harm prong and fast-track his request for a preliminary injunction.

The Court finds Defendants' position to be persuasive. The maneuver Plaintiff attempts— to meet his irreparable harm burden through a separation-of-powers claim—has no feasibility in this Circuit. "Indeed, two United States Courts of Appeals have considered whether Appointments Clause or Separation of Powers violations necessarily establish irreparable harm and have concluded that they do not." *Does 1-26 v. Musk*, 771 F. Supp. 3d 637, 679 (D. Md. 2025) (first citing *Alpine*, 121 F.4th at 1333–34; and then citing *Leachco*, 103 F.4th at 753)). To try and circumvent *Leachco*'s reach, Plaintiff attempts to cabin *Leachco* to Appointments Clause cases. Pl.'s Reply at 9. This reading has no merit in the face of *Leachco*'s plain text. While it is true that *Leachco* addressed a challenge to federal officers' removal protections, its holding went beyond those facts; *Leachco* unequivocally stated that "merely being subjected to an agency *constructed in violation of the separation of powers* does not, by itself constitute irreparable harm." 103 F.4th at 753 (emphasis added).

The Tenth Circuit has made clear that per se irreparable harm is only assumed when the constitutional violation concerns "individual constitutional rights, such as the rights guaranteed by the First and Fourteenth Amendments." *Id.* at 753; *see also Aposhian v. Barr*, 958 F.3d 969, 990 (10th Cir. 2020) ("[O]ur cases finding that a violation of a constitutional right alone constitutes irreparable harm are limited to cases involving individual rights, not the allocation of powers

among the branches of government"). Limiting per se irreparable harm to individual rights preserves the extraordinary nature of preliminary injunctions. "One can only imagine the deluge of preliminary injunction litigation the courts would face if every action allegedly taken in excess of the agency's authority (whether couched in constitutional terms or not) was deemed irreparable, simply because the participants should not be compelled to participate in a proceeding that the agency arguably lacks authority to bring." *Meta Platforms, Inc. v. Fed. Trade Comm'n*, 723 F. Supp. 3d 64, 81 (D.D.C. 2024); *Imp. Motors II, Inc. v. Cowen*, No. 25-CV-07284-RFL, 2025 WL 2589046, at *3 (N.D. Cal. Sept. 8, 2025) ("This Court declines to extend *Axon* to conclude that it overruled *Collins* and created a sweeping new 'entitlement on the merits to a preliminary injunction in every case where [collateral] constitutional challenges [to administrative proceedings] are raised.'" (quoting *Leachco*, 103 F.4th at 759)).

Plaintiff's belief that *Panama Refining* "proves the point" that "[i]f the statute conferring jurisdiction is void on non-delegation grounds, it follows that the Constitution automatically displaced the agency's jurisdiction the moment the statute was enacted" has no force. Pl.'s Reply at 6. *Panama Refining* is one of two anomalous Supreme Court decisions that struck down laws under the non-delegation doctrine. *See Pan. Ref.*, 293 U.S. at 433; *A.L.A. Schechter Poultry Corp. v. United States*, 295 U.S. 495 (1935). In *Panama Refining*, Congress had enacted the Petroleum Act, 15 U.S.C. § 709 and granted the President authority, pursuant to Section 9(c) of the Act, to prohibit the interstate transport of petroleum "withdrawn from storage in excess of the amount permitted" by state law or regulation. 293 U.S. at 405–06. President Roosevelt issued an executive order proscribing just that. Then, in a subsequent executive order, the President authorized the Secretary of the Interior to "exercise all powers vested in the president for the purpose of enforcing Section 9(c) of said act and said order." *Id.* at 406–07 (internal quotation marks omitted).

Petroleum companies challenged Section 9(c) as "an unconstitutional delegation to the President of legislative power and as transcending the authority of the Congress under the commerce clause." *Id.* at 410.  The Supreme Court agreed and enjoined Section 9(c) for violating the non-delegation doctrine.  "As to the transportation of oil production in excess of state permission, the Congress has declared no policy, has established no standard, has laid down no rule.  There is no requirement, no definition of circumstances and conditions in which the transportation is to be allowed or prohibited."  *Id.* at 430.  The Court then reversed and remanded the cases to district court, instructing the lower court to "modify its decrees in conformity with this opinion so as to grant permanent injunctions[.]"  *Id.*

*Panama Refining* is unusable for determining whether Plaintiff has asserted an irreparable harm.  It did not involve administrative proceedings, nor did it discuss irreparable harm, and it has never been expanded to permit pre-enforcement challenges of agency actions under separation-of-powers principles.  Plaintiff does not offer any authority to the contrary.  He instead ventures that that because *Panama Refining* involved a permanent injunction it "necessarily involv[ed] irreparable harm."  Pl.'s Reply at 12.  He then appears to subsume a finding of per se irreparable harm into the Supreme Court's decision on the merits of the non-delegation claim.  *Id.*  In doing so, Plaintiff conjures a holding that simply does not exist.  *Panama Refining* did not explicitly discuss irreparable harm, but it is obvious that the litigants did not rest their right to equitable relief on a constitutional violation alone.  The *Panama Refining* plaintiffs sought to enjoin specific harms prompted by Section 9(c)—the government's invasion of their property and the risk of criminal penalties, as well as fines.[4]  It was on these grounds that the Supreme Court held that they "were

---

[4] Part of the harm the plaintiffs in *Panama Refining* sought to prohibit, the government's repeated intrusion onto their private property, has long been recognized as a prototypical form of irreparable harm. Samuel L. Bray, *Multiple Chancellors: Reforming the National Injunction*, 131 HARV. L. REV. 417, 433 (2017) (explaining that the plaintiffs in *Panama Refining* "sought an injunction that would keep the defendants from coming upon the refining plant of the

entitled to invoke equitable jurisdiction to restrain enforcement."  293 U.S. at 246.  The Court did not presume that the non-delegation claim would result in irreparable harm.  Indeed, the Supreme Court has only extended that privilege to the infringement of First Amendment rights.  *See Elrod v. Burns*, 427 U.S. 347, 373 (1976) ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."); *Nat'l Ass'n for Gun Rights v. Lamont*, ___ F.4th ___, 2025 WL 2423599, at *23 (2d Cir. 2025) ("[T]he Supreme Court has never applied [the presumption of irreparable harm] outside the First Amendment context.").[5]

Ultimately, *Panama Refining* does not relieve Plaintiff of his duty to demonstrate irreparable harm.  He must face certain and great harm in the absence of judicial intervention to justify a preliminary injunction—a burden he has not and cannot meet through an alleged separation-of-powers violation alone.  *Leacho* has already been applied to proceedings before the HIWU; the Western District of Oklahoma denied a temporary restraining order, seeking to prevent the Authority from enforcing HISA regulations, on the grounds that "being subjected to an unconstitutional exercise of authority or an illegitimate decisionmaker" does not amount to irreparable harm.  *Offolter v. Horseracing Integrity & Safety Auth.*, Case No. CIV-24-749-D, 2024

---

plaintiff")."[L]egal remedies are presumptively inadequate in cases of continuing injury, whether that injury is to intellectual property rights or to other legally protected interests . . .This principle was  well established by the early nineteenth century, when Joseph Story observed that "Courts of Equity" would enjoin "repeated trespasses" and "upon similar principles . . . interfere in cases of Patents for Inventions, and in cases of Copy-rights."  Mark P. Gergen et. al., *The Supreme Court's Accidental Revolution? The Test for Permanent Injunctions*, 112 COLUM. L. REV. 203, 212–13 (2012).

[5] Though not decisive in the present case, it is worth noting that whether a constitutional violation presumptively causes irreparable harm is an unsettled question and one on which the circuits have drastically split. *Compare Hanson v. District of Columbia*, 120 F.4th 223, 244 (D.C. Cir. 2024); *Del. State Sportsmen's Ass'n v. Del. Dep't of Safety & Homeland Sec.*, 108 F.4th 194, 204 (3d Cir. 2024) (limiting the presumption of irreparable harm to First Amendment violations), *with Lamont*, 2025 WL 2423599, at *23; *Siegel v. LePore*, 234 F.3d 1163, 1178 (11th Cir. 2000) (applying the presumption of irreparable harm to a select few constitutional amendments, such as the Fourth and Eighth), *and Leaders of a Beautiful Struggle v. Baltimore Police Dep't*, 2 F.4th 330, 346 (4th Cir. 2021); *Patel v. Glenn*, 2022 WL 16647974, (6th Cir. Nov. 3, 2022); *Morehouse Enters. v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 78 F.4th 1011 (8th Cir. 2023); *Baird v. Bonta*, 81 F.4th 1036, 1046 (9th Cir. 2023) (finding that nearly all constitutional violations presumptively cause irreparable harm).

WL 3732056, at *3 (W.D. Okla. Aug. 8, 2024).  Plaintiff's claim is no different.  Because he has

not stated a harm beyond subjection to the jurisdiction of an allegedly unconstitutional agency, his

separation-of-powers claim does not warrant a preliminary injunction.  *Leachco*, 103 F.4th at 753.

B. Any costs Plaintiff incurs from defending against arbitration and the imposition of civil
   fines do not result in irreparable harm because Plaintiff can recover monetary damages
   from HIWU and HISA.

The Court now turns to Plaintiff's assertion that complying with a rule promulgated in

violation of the APA and FTC regulations causes irreparable harm because he will be unable to

obtain monetary damages after the arbitration.  Mot. for Prelim. Inj. at 48.  That concern has no

bearing here.  HIWU and HISA are private entities and do not enjoy the protection of sovereign

immunity.  *See* 15 U.S.C. §§ 3052(a), 3053 (stating that the Authority is a "private, independent,

self-regulatory, non-profit corporation"); *Walmsley v. Fed. Trade Comm'n*, 117 F.4th 1032, 1037

(8th Cir. 2024) ("The Authority is a private, nonprofit corporation."), *cert. granted, judgment

vacated*, 145 S. Ct. 2870 (2025); *Tuma v. Hawthorne Race Course, Inc.*, No. 24-CV-8307, 2025

WL 2098700, at *7 (N.D. Ill. July 25, 2025) ("HISA and HIWU (operating under HISA), are not

government bodies but rather private organizations operating under the FTC.").  And worries about

recovery from the FTC following appeal are premature.  Plaintiff may prevail at arbitration or

HIWU may decline to impose fines.  Thus, at this stage in the litigation, all monetary harm is

recoverable.  *See Kim v. Fin. Indus. Regul. Auth.*, 698 F. Supp. 3d 147, 169–70 (D.D.C. 2023); *cf.

Env'tl Prot. Agency*, 989 F.3d at 886 (irreparable injury must be "imminent").

Delaying relief does not pose any threat to the "very existence" of Plaintiff's veterinary

practice.  *Mountain Valley*, 915 F.3d at 218.  Plaintiff has not demonstrated that Rule 3214's terms

nor the enforcement proceeding itself threaten his practice's financial viability.  Defendants

underscore that Plaintiff "remains fully free to continue treating covered horses and otherwise

engage in horseracing-related activities covered under HISA, not to mention activities that are not covered under HISA." Defs.' Resp. at 23. Plaintiff agrees that he is "permitted to continue his practice" during the pendency of the administrative proceedings. Pl.'s Reply at 7 (arguing that staying the arbitration would not cause Defendants harm because Plaintiff's "alleged conduct is so un-threatening that [the Authority] has permitted him to continue his practice during its pendency"); *cf. Dominion Video*, 356 F.3d at 1261 (reversing district court's finding of irreparable harm where plaintiff had not established "any threat to its existence, damage to its goodwill, loss of customers, or loss of its competitive position in the market"). Plaintiff also does not seek to enjoin the enforcement of Rule 3214 in general. Pl.'s Reply at 2. Thus, the "compliance costs" of adhering to Rule 3214 (assuming they exist, seeing as the cost of not possessing a drug is likely less than the cost of possessing it) would be unaffected by his requested relief. *See United States v. St. Bernard Par.*, 756 F.2d 1116, 1123 (5th Cir. 1985) ("It is black letter law that an injunction will not issue when it would be ineffectual."); *Second Amend. Found., Inc. v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 702 F. Supp. 3d 513, 540 (N.D. Tex. 2023). The Court finds Plaintiff has not shown any manifest harm caused by the presumed APA and FTC violations.

C. Plaintiff's Fifth Amendment due process claim fails on the merits and therefore does not result in irreparable harm.

Plaintiff contends that Rule 3214(a) provides insufficient notice of the conduct it prohibits and is therefore void-for-vagueness under the Fifth Amendment. Mot. for Prelim. Inj. at 38. In parallel fashion to his non-delegation claim, Plaintiff maintains that proving a due process violation proves irreparable harm. *Id.* at 48. The Tenth Circuit has not addressed whether a Fifth Amendment violation suffices for irreparable harm, but this Court will assume it does under the Tenth Circuit's holding that individual constitutional harms need "no further showing of irreparable injury." *Planned Parenthood Ass'n v. Herbert*, 828 F.3d 1245, 1263 (10th Cir. 2016);

*Aposhian*, 958 F.3d at 990.   However, because the Court finds Plaintiff's due process claim unconvincing, it in turn finds a lack of irreparable harm.

Agency regulations are subject to constitutional challenge under the Fifth Amendment's Due Process clause for being impermissibly vague.  *Brennan v. Occupational Safety & Health Rev. Comm'n*, 505 F.2d 869, 872 (10th Cir. 1974).   Prohibiting vague statutes and regulations serves twin aims: (1) it ensures that regulated parties are informed of what is required of them to conform their conduct with the law and (2) it provides "precision and guidance" to those enforcing the law so that they "do not act in an arbitrary or discriminatory way."  *FCC v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012).   Plaintiff brings a facial challenge to Rule 3214.   To succeed in that posture, Plaintiff must show that "no set of circumstances exists under which the [Rule] would be valid."  *Wash. State Grange v. Wash. State Republican Party,* 552 U.S. 442, 449 (2008).   Rules which are "so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates due process."  *Id.*   A regulation is not void for vagueness if it "has a 'plainly legitimate sweep.'"  *Fabrizius v. Dep't of Agric.*, 129 F.4th 1226, 1238 (10th Cir. 2025) (quoting *Wash. State Grange*, 552 U.S. at 449).   Where, as here, the regulation is "promulgated pursuant to remedial civil legislation," it is interpreted "in the light of the conduct to which it is applied."  *Id.*

Plaintiff accuses the Authority of not "provid[ing] a single word of guidance as to how Covered Veterinarians must alter their practice to comply with Rule 3214(a)."  Mot. for Prelim. Inj. at 29; *see also id.* at 38 ("The possession rule provides no reasonably discernable range of conduct that it prohibits.").   The Court disagrees; the way veterinarians "must alter their practice" to comport with Rule 3214(a) is by refraining from the conduct it proscribes, i.e. possessing banned substances or banned methods.   Those substances are enumerated in the Authority's "Prohibited

List," leaving scant room for confusion over what can and cannot be possessed.  *See* HISA Rule Series 4000.  Further, Plaintiff's statement that "possession is not the fact on which liability depends" is simply untrue.  Mot. for Prelim. Inj. at 37.  Possession is the exact fact on which liability depends and "delineates [the Rule's] reach in words of common understanding." *Brennan*, 505 F.2d at 872; *United States v. Woods*, 684 F.3d 1045, 1059 (11th Cir. 2012) ("[T]he ordinary meaning of the terms in the statute show it is not unconstitutionally vague.  'Possession' is the act or condition of having in or taking into one's control or holding at one's disposal." (citation omitted)).  The Rules also include thorough enforcement guidance, specifying what classes banned substances fall into, the penalty points associated with each class, and the fines/suspension periods applicable to subsequent violations.  *See* HISA Rules 3323–33.

The Authority's decision not to define "compelling justification" does not alter the Court's conclusion.  Permitting possession when there is a compelling justification for doing so is an exception to the rule.  Veterinarians can always comply with Rule 3214 by not possessing the substances it prohibits.  Because Rule 3214 imposes strict liability for possession, the scenarios where the "compelling justification" exemption applies will be a small minority.  Again, Plaintiff's burden is to show that "there is no set of circumstances where the rule would be valid." *Wash. State Grange*, 552 U.S. at 449.  Focusing on the possible ambiguity in granting exceptions ignores the Rule's "plainly legitimate sweep." *Fabrizius*, 129 F.4th at 1238.  Moreover, the definition of "compelling" excludes a vast array of justifications, such as a covered person merely wanting to possess the substance, thinking they should be able to, or forgetting that they have it on hand. What Plaintiff's critique amounts to is a question about edge cases.  But a regulation "need not spell out all situations" where an activity is prohibited, *Jake's Fireworks Inc. v. Acosta*, 893 F.3d 1248, 1258 (10th Cir. 2018), nor speak with mathematical precision, *Fabrizius*, 129 F.4th at 1239,

to be constitutional.  It is enough that those enforcing the law can look to dictionary definitions and the term's use in comparable anti-doping schemes to discern its meaning.  *Id.* at 1238–39 (finding dictionary definitions to provide sufficient guidance on the meaning of the term "responsible").  In sum, "[t]here are at least some instances in which a reasonable person can infer meaning from the Final Rule . . . Therefore, the Court concludes that Plaintiffs are not likely to succeed on the merits of their vagueness claim."  *Second Amend. Found.*, 702 F. Supp. 3d at 533.

D.  Plaintiff has not identified an irreparable harm resulting from the alleged Seventh Amendment violation.

The Court now addresses the question of jurisdiction under *Thunder Basin* and Plaintiff's related Seventh Amendment claim.  "Within constitutional bounds, Congress decides what cases the federal courts have jurisdiction to consider" including "when, and under what conditions, federal courts can hear them."  *Bowles v. Russell*, 551 U.S. 205, 212–13 (2007).  There is a "strong presumption favoring judicial review of administrative action."  *Mach Mining, LLC. v. EEOC*, 575 U.S. 480, 486 (2015) (quoting *Bowen v. Mich. Acad. of Fam. Physicians*, 476 U.S. 667, 670 (1986)).  "That presumption is rebuttable: It fails when a statute's language or structure demonstrates that Congress wanted an agency to police its own conduct."  *Id.*  A district court may only intervene in administrative proceedings if it concludes that a plaintiff's claims are not "of the type Congress intended to be reviewed within [the] statutory structure."  *Thunder Basin*, 510 U.S. at 212.  The court first considers whether Congress intended to preclude judicial review either implicitly or explicitly.  *Id.* at 207.  If the statute does oust federal courts of jurisdiction, a plaintiff can still obtain review by demonstrating that (1) precluding district court jurisdiction would foreclose all meaningful judicial review; (2) their claims are wholly collateral to the statutory review scheme; and (3) the claims are outside the agency's expertise.  *Id.*

The prototypical statute eliminating federal court jurisdiction under *Thunder Basin* is one

17

which directs review of agency determinations to a U.S. Court of Appeals, instead of to a district court. *Bank of Louisiana v. Fed. Deposit Ins. Corp.*, 919 F.3d 916, 922 (5th Cir. 2019). The Act is not a statute of this ilk. Rather than vest review in a federal appellate court, the statute permits a final FTC decision to be challenged in a district court through the APA. 5 U.S.C. § 704; 15 U.S.C § 3058(b)(3)(B); *cf. Elgin v. Dep't of Treasury*, 567 U.S. 200, 206 (1994).

During Plaintiff's requested hearing in support of his preliminary injunction, the Court asked the parties to share their view as to whether *Thunder Basin* divests the Court of jurisdiction over Plaintiff's Seventh Amendment claim. Numerous other courts have found that *Thunder Basin* counsels against judicial interference in administrative proceedings, including those before FINRA, when the party alleges a Seventh Amendment violation, and the parent statute vests review in the courts of appeals. Although the Act does not mirror that appellate review structure, the Court ordered supplemental briefing as to whether district court review is implicitly displaced by the Act's "text, structure, and purpose." *Bank of Louisiana*, 919 F.3d at 923 (noting that implicit preclusion requires a "more complex analysis"); *see, e.g.*, *Connecticut v. Spellings*, 453 F. Supp. 2d 459, 486 (D. Conn. 2006) (finding that statute's administrative review scheme "reflect[e]d an intent to preclude the type of pre-enforcement action brought by the state" under *Thunder Basin* even though final agency decisions "could be reviewed by a district court under the APA"). However, because Plaintiff has not shown any irreparable harm resulting from the purported constitutional violations, there will be no judicial interference in his administrative proceeding. The Court therefore does not reach the *Thunder Basin* question.

     i.    Plaintiff's facial challenge under the Seventh Amendment fails because there is no per se irreparable harm.

Plaintiff challenges the HISA's "mandate to use binding arbitration" as a facial violation of the Seventh Amendment right to a jury trial. Mot. for Prelim. Inj. at 10. Facial challenges "are

the most difficult to mount successfully," but may be "brought under any otherwise enforceable provision of the constitution." *City of Los Angeles v. Patel*, 576 U.S. 409, 415 (2015). Plaintiff must demonstrate that the use of arbitration is "unconstitutional in all applications." *Id.* at 418. "[W]hen assessing whether a statute meets this standard" the Court considers "only applications of the statute in which it actually authorizes or prohibits conduct." *Id.*

Plaintiff's Seventh Amendment argument confuses the difference between a facial and an as-applied challenge. He alternates between discussing why the specific claims brought against him and the actions HIWU is generally authorized to initiate warrant a jury trial. *See id.* at 41–47. For instance, he contends that a jury is necessary because "the claims against Dr. Scott have close analogues at common law," *id.* at 45, and predicts that Defendants will "attempt to distinguish the scope of common law fraud or breach-of-contract claims from the charges brought here," *id.* Yet later, Plaintiff compares the Act's goal of accurately reflecting a horse's condition by preventing doping to "a quintessential form of fraud," *id.* at 43. The "'anti-doping' violations defined in HISA's Rules therefore confront a question tried to a jury at common law as a breach of agreement among competitors to run a fair race." *Id.* at 45. These statements reveal a significant discrepancy between the claim Plaintiff purports to bring—a facial challenge—and the one he actually argues—an as-applied challenge. This conflict becomes even more perplexing when evaluating irreparable harm. Plaintiff at once assails HIWU's actions as "void ab initio" under the Seventh Amendment, *id.* at 48, and protests that arbitration violates his "individual right" to a jury trial. *Id.* at 48; Pl.'s Reply at 11. In the end, both theories fail. Plaintiff has not mounted a viable facial challenge, nor has he articulated an irreparable harm flowing from his Seventh Amendment claim.

The right to a jury trial attaches when the suit is one which would have arisen "at common law." *Tull v. United States*, 481 U.S. 412, 417 (1982). The Supreme Court has held that, in the

context of agency proceedings, Congress cannot "eliminate a party's Seventh Amendment right to a jury trial merely by relabeling the cause of action to which it attaches and placing exclusive jurisdiction in an administrative agency or a specialized court of equity." *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 61 (1989). Courts use a two-step analysis to evaluate whether an agency adjudication is proper. First, the court determines if the agency's claim against the individual is "legal in nature." *Id.* at 53. Whether a claim is legal in nature depends on both (1) the cause of action and (2) the remedy it provides, *id.* at 60, but the remedy is the "more important consideration," *id.* (internal quotations omitted). If it is a legal claim, the court then considers whether the right the agency seeks to enforce is subject to the "public-rights exception." *Atlas Roofing Co. v. Occupational Safety & Health Rev. Comm'n*, 430 U.S. 442, 455 (1977). "Under this exception, Congress may assign the matter for decision to an agency without a jury, consistent with the Seventh Amendment." *Secs. & Exchange Comm'n v. Jarkesy*, 603 U.S. 109, 127 (2024).

Plaintiff's primary case for his Seventh Amendment claim is *Jarkesy*. Mot. for Prelim. Inj. at 41–43. In *Jarkesy*, the Securities and Exchange Commission ("SEC") had initiated an enforcement action against two individuals, alleging securities fraud and seeking up to $300,000 in civil penalties. *See Jarkesy*, 603 U.S. at 123. Beginning with the remedy, the Court concluded that the SEC's imposition of civil penalties was "all but dispositive." *Id.* "What determines whether a monetary remedy is legal is if it is designed to punish or deter the wrongdoer, or, on the other hand, solely to restore the status quo.'" *Id.* (quoting *Tull*, 481 U.S. at 422). Because the relevant penalties would not be used to "return any money to victims," but were "designed to punish and deter," they were a prototypical common law remedy. *Id.* at 130. The Court then moved to the cause of action and found that the "close relationship between the causes of action in this case and common law fraud" supported its conclusion. *Id.* Of particular import to the

Court's analysis was Congress's "deliberate" use of "fraud" in the Securities Exchange Act. *See id.* The majority interpreted this word choice as indicating that Congress "incorporated prohibitions from common law fraud in federal securities law" and sought to target the same misconduct as common law fraud, e.g., misrepresenting or concealing material facts. *Id.* The public rights exception was thus inapplicable because, regardless of the actions "statutory origins," fraud "resemble[d] a traditional legal claim." *Id.* at 135.

Plaintiff leads with the assertion that "the suit in this case is virtually identical" to the one in *Jarkesy*. Mot. for Prelim. Inj. at 42. To be "virtually identical" to Plaintiff's suit, *Jarkesy* would need to have considered a facial challenge. It did not. The Supreme Court answered a "straightforward question: whether the Seventh Amendment entitles a defendant to a jury trial when the SEC seeks civil penalties against *him* for securities fraud." 603 U.S. at 120 (emphasis added). Nothing in *Jarkesy* limited agencies' power to seek civil fines for suits without a common law mirror or to pursue equitable remedies. Arbitration is thus obviously appropriate in at least one scenario where it will be applied—when the HIWU seeks exclusively equitable relief. 15 U.S.C. § 3057(d)(3)(A); *Patel*, 576 U.S. at 423.[6] Despite Plaintiff's contortion of the anti-doping rules into "common law" causes of action, the regulations also go far beyond traditional concerns of fair play and "warranties as to the quality of a racehorse for purchase." Mot. for Prelim. Inj. at 46. The possession violation itself is unlike any common law claim and he includes no support

---

[6] In his reply, Plaintiff argues that the Seventh Amendment entitles individuals to a jury trial even where the sole penalty is a suspension because suspensions are not equitable remedies since they are "intended to punish culpable individuals." Pl.'s Reply at 16 (quoting *Tull*, 481 U.S. at 412). Plaintiff's analysis relies on a misapprehension of what distinguishes legal remedies from equitable remedies. While English common law permitted courts of equity to award certain monetary damages, such as restitution, it did not permit courts of law to issue injunctive relief, such as abating a public nuisance. *Tull*, 481 U.S. at 424. Whether the fines the government seeks go beyond "restoring the status quo" is relevant for differentiating forms of monetary relief; it cannot be used to transform equitable relief into a legal remedy. *See generally id.* Here, suspension prohibits a covered person from participating in covered events. *See* HISA Rule 3229. It is a form of equitable relief aimed at preventing certain conduct. James Fleming, Jr., *Right to a Jury Trial in Civil Actions*, 72 YALE L.J. 655, 682 (1963). The Authority's ability to order disgorgement of an individual's winnings following a rigged race is another equitable remedy.

for the idea that private parties could have sued an equine veterinarian for possessing a drug near a racetrack; all of Plaintiff's authorities pertain to private parties who could sue for "purse money" following a rigged horse race. *Id.* at 46. Accordingly, to the extent that Plaintiff's facial challenge is meant to prove a "constitutional infringement" and "require no further showing of irreparable injury," it folds.

        ii.     Even if the Court construes Plaintiff's Seventh Amendment claim as an as-applied challenge, there is no evidence of irreparable harm.

Though Plaintiff shies away from an as-applied challenge, the Court addresses the question of a Seventh Amendment right for Plaintiff's arbitration since it is frequently referenced in his filings. Plaintiff insists that he will suffer a "hear-and-now injury [sic]" from proceeding before an arbitrator. Mot. for Prelim. Inj. at 10. He pulls the "here-and-now" language from the Supreme Court's decision in *Axon*. *See Axon Enter. v. Fed. Trade Comm'n*, 598 U.S. 175, 191 (2023). That statement was made in the context of determining whether the Supreme Court had jurisdiction under *Thunder Basin* to hear challenges to the constitutional authority of administrative law judges. *Id.* The case did not involve injunctive relief and, in fact, *Leachco* refused to equate the "here-and-now" injury with irreparable harm because *Axon* "did not address the issue of irreparable harm, or any other issue regarding entitlement to injunctive relief." 103 F.4th at 758; *cf. Vape Central Grp., LLC v. U.S. Food & Drug Admin.*, Civil Action No. 24-3354, 2025 WL 637416, at *9 (D.D.C. Feb. 27, 2027) ("[I]t is far from clear that [company] will even suffer a "there-and-then injury" at some later time, since the company has yet to identify any genuine dispute of material fact that might, under any circumstances, support a Seventh Amendment claim.").

Plaintiff offers no other caselaw to prove that his "individual" Seventh Amendment injury

is irreparable.[7]  Courts have consistently reached the opposite conclusion.  "It is well established that in the Seventh Amendment context, 'the harm resulting from the denial of a jury trial can be remedied on appeal, even after the case has already been tried' because a reviewing court can "simply order[ ] a new trial.'"  *Lukezic v. Fin. Indus. Regul. Auth., Inc.*, No. 25-CV-00623 (DLF), 2025 WL 2305859, at *3 (D.D.C. Aug. 10, 2025).  Accordingly, "merely being subject to a proceeding before an ALJ where a particular remedy sought is allegedly unconstitutional or not statutorily permissible does not leave YAPP without a remedy."  *YAPP USA Auto. Sys., Inc. v. Nat'l Lab. Rels. Bd.*, 748 F. Supp. 3d 497, 517 (E.D. Mich. 2024), *appeal dismissed*, No. 24-1754, 2025 WL 2606098 (6th Cir. Aug. 4, 2025); *Vape Cent. Grp., LLC v. U.S. Food & Drug Admin.*, No. CV 24-3354 (RDM), 2025 WL 637416, at *6 (D.D.C. Feb. 27, 2025) ("It is thus unsurprising that every district court that has considered the question post-*Jarkesy* has held that the relevant statutory procedures for challenging final administrative orders provide a sufficient opportunity for 'meaningful review' of any Seventh Amendment defense.").

      The Court therefore finds that Plaintiff has not established irreparable harm for any of his claims.  The request for a preliminary injunction is denied.  *Env'tl Prot. Agency*, 989 F.3d at 890.

## CONCLUSION

      **IT IS THEREFORE ORDERED** that Plaintiff's motion for a preliminary injunction, Doc. 8, is **DENIED**.

_____
**SARAH M. DAVENPORT**
**UNITED STATES DISTRICT JUDGE**

---

[7] Plaintiff's reliance on cases finding that the loss of a professional license is a type of forfeiture, and therefore require a jury, are inapposite.  Pl.'s Reply at 11. The Authority cannot revoke Dr. Scott's veterinary license; it can only prevent him from participating in covered races and events. *See* HISA Rule 3229.